The fourth district appellate court of the state of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Taylor. Welcome counsel. Our case this afternoon is 425-0283 Howard versus IELRB and others. And for the appellant, I've asked you counsel, please state your name. Yes, your honor. Thank you, Nina Gugis for appellant Scott Howard. Thank you. And I'm advised that the respondents will be dividing their arguments. So on behalf of the IELRB counsel, would you state your name, please? Yes, Assistant Attorney General Caleb Rush. Thank you, counsel. And on behalf of the Board of Education, state your name, counsel. Jennifer Donnelly. Thank you, counsel. And then at this time on behalf of the appellant, Ms. Gugis, is that pronounced correctly, Gugis? Yes, your honor. Thank you. You may proceed. May it please the court. Again, Nina Gugis for petitioner and appellant Scott Howard. This case presents a fairly straightforward question, whether the Illinois Educational Labor Relations Board should have dismissed this matter at the investigative stage or whether the record before it required issuance of a complaint in a hearing. Under section 15 of the Illinois Educational Labor Relations Act, once the investigation reveals an issue of law or facts sufficient to warrant a hearing, the board must issue a complaint. And under Michaels, the board's role at that stage is analogous to a grand jury. It is screening for a sufficient basis to proceed. It is not finally deciding which version of the events prevails. That point matters here because the board did not simply decide that Mr. Howard ultimately failed to prove retaliation after a hearing. There was no hearing. The board stopped the case at the threshold. So the question before the court is whether the board was right to end the matter at the screening stage, even though the record before it contained evidence of protected activity, hostility, timing, and disciplinary irregularity. Petitioner's position is that it was not. Before turning to the merits, petitioner would briefly address the district's procedural arguments. The rule 341 argument does not justify dismissal or striking the appellant's brief because those are harsh and discretionary remedies reserved for cases where defects actually preclude meaningful review. That is what this court said in glass, and it is consistent with Atkins. This is not a case where the court is unable to understand the issues, and it is plainly not a case where respondents were unable to respond on the merits because they did respond on the merits in detail. And to the extent the district argues the record is incomplete, petitioner proceeded in a proper manner pursuant to rule 329 by filing a motion to supplement as recognized in per cat, rather than attempting to enlarge the record merely through an appendix. Petitioner's point on supplementation is a narrow one. The board stated that Mr. Howard first raised disparate treatment and his exceptions to the executive director's recommended decision in order. And petitioner's position is that he raised it earlier during the investigation, specifically in the May 28th, 2024 submission to board agent DeCoke. But even without those materials, petitioner's position remains the same. The existing investigative record was sufficient to require a hearing. So the procedural issues should not distract from the merits, which are what matter here. Turning to the merits, the board did two things that were especially important. First, it held that Mr. Howard did engage in protected activity, at least as to the union assisted complaints regarding school resource officer pay and the collective bargaining agreement. That is significant because it means the board did not reject the case at the first step. It recognized that there was protected conduct under the act. Second, despite that holding, the board concluded there was no causal connection between that protected activity and the adverse action. And therefore there was no need for a hearing. That second step is where the board went wrong because the investigative record contained enough evidence of retaliatory motive to require the matter to proceed. The respondent's position effectively treats this case as though Mr. Howard had to conclusively prove retaliation before a complaint could even issue. But that is not the statutory scheme. At this stage, the question is whether the record disclosed an issue of law or fact sufficient to warrant a hearing. Under the applicable abuse of discretion standard, the board erred in dismissing the charge at the investigatory stage because the record before did disclose that kind of issue. Councilor, I have a question. I wanna make sure I understand your argument. Is it your contention that Howard raised his allegations of unlawful retaliation in the administrative record before doing so in his exceptions to the ruling? Absolutely, your honor. At what stage and how did he do that? Yes, your honor. The specific actions were brought up in response to, during the course of Investigator DeKoak's investigation or Board Agent DeKoak's investigation, he submitted requests for information from petitioner, which petitioner then responded to. And those include a large scope of activity, including the SRO issue that was complained of. It included the, it included the racial discrimination, specifically preferring white candidates, job applicants who had committed violent offenses over the more qualified non-white applicants. It also included the statements from his immediate supervisor that his continued advocacy would cost someone their job. All of these were raised in the request in the responses to the investigator's request for information. Well, that's my question. Raising allegations, it seems to me in this record, were these allegations raised only in your correspondence with the board investigator? Is that good enough to get this matter before the board as a hearing board? Your honor, we maintain that it is enough. This was not just, these were requests to information. Of course, the ILRB complaint, the Unfor Labor Practice states in general terms what the claim is, but it's during the course of the investigation that the specific allegations and information that's the underlying basis of the complaints, specifically the retaliation, the anti-union retaliation, where those typically come out. And to the extent that respondents claim that they are prejudiced in any way, we believe that the fallback would be to remand and allow the ILRB to reopen the evidence and to allow for a response. So that supplementation- Oh, yes. I have to be clear, did you ever present any evidence before the board beyond this communication with the board's investigator? Your honor, we, that the extent that the main avenue for presenting all of this information was in response to the specific questions by the investigator. Well, I think that constitutes, no, you didn't present evidence to the board at the hearing. You're just communicating with the investigator. Isn't that correct? I will say, your honor, there was no opportunity to present this evidence at a hearing because there was no hearing. And so the main avenue for bringing these issues is the correspondence with the investigator during his own investigatory stage, which should have been considered by the board. Go ahead. But how is the district to know about these claims if none of that is brought to their attention? I know you say it's during the investigatory process, but if you're only serving it in response to that, how is the opposing party to know about any of this? Yes, your honor. And that raises a good point about possible prejudice to the other side. We are typically what would happen, and we believe, although this could possibly be surmised by the record, but typically what the investigator, the board agent would do when requesting information is go to the other side for an opportunity to respond. We don't know what happened and why that was not done. We do know from the record that there was an abrupt change in an agent from one agent. It was agent to Coke who first was on the case, and then there was another, and perhaps that was the reason. But our position is that typically that's where that back and forth dialogue would occur. And again, to the extent that respondents claim that there was any prejudice, that could easily be remedied by remanding the case and allowing the respondents an opportunity to respond to that. You may continue. Yes, your honor. Thank you. The respondent's position effectively treats this case as though Mr. Howard had to conclusively prove retaliation before a complaint could even issue, but that's not the statutory scheme. The question is whether there's an issue of law or fact sufficient to warrant a hearing. And we maintain that there was. The reality of these types of cases is that retaliatory motive is rarely admitted outright. Employers generally don't announce that they are acting because an employee engaged in protective activity. The case is recognized that motive is ordinarily established through circumstantial evidence, including timing, hostility, irregular treatment, and an overall pattern of events. And the city of Burbank decision identifies familiar indicators that the court looks to, including hostility toward protected activity, knowledge of that activity, temporal proximity, inconsistencies or irregularities in the employer's conduct, shifting explanations, and disparate treatment. When those factors are applied here, the record is sufficient to require this matter go forward. Mr. Howard worked for the district for 14 years without any prior discipline whatsoever. He was promoted to head custodian. He then raised concerns tied to bargaining unit conditions and hiring practice, including seeking union assistance regarding SRO pay and later meeting with management and a union representative about workload and hiring concerns. According to the investigatory narrative, investigative narrative before the board, Mr. Somerville, Mr. Howard's direct supervisor, warned that continued advocacy would cost someone a job. Dr. Aikajaku, the district's human resource administrator, reacted with physical anger and Mr. Howard's advocacy. Where was any of this contained within the grievance that your client filed? This was not specifically referenced in the, Your Honor, are you referring to the initial grievance that was filed with the union? Yeah, that raised all of this. I didn't see it anywhere in the grievances or in the response to it. Yes, Your Honor, it was not, reviewing the record, it was not initially, all of this detail was not raised in the initial grievance that was filed. Of course, that was, the grievance was filed long before we were involved in this case. But we do believe that even though it was not included in the initial grievance, it is still relevant to determining whether there was a sufficient basis to say if there was an issue of fact or law that would determine whether a hearing is warranted, specifically as it relates to the causal connection and the evidence of, yes, Your Honor. You just emphasized the initial grievance. Was there ever any effort made to amend it, to include additional information? No, Your Honor, not as it pertains to the protected activity, the reaction from Mr. Somerville or Dr. Ikejapu. It's not the initial grievance, it's the sole grievance that was filed. Yes, Your Honor, and you're referring to the grievance that was initially filed with the district in 2023? Is that what Your Honor is referring to?  Yes, May 8th, 2023. I'm following up on Justice Grishow's question that this doesn't appear anywhere and no effort was made to include it at any time. Yes, Your Honor, the initial grievance that was filed by the union did not include that information and we do concede that point. And we maintain that it was brought up. Oh, you keep saying that word initial. That suggests that there was something beyond the initial grievance, but there wasn't, was there? No, Your Honor. Okay, do you make any more? Yes, Your Honor. And within days of Mr. Howard's late April advocacy regarding the internal promotion, specifically, he objected to an external hire to a full-time custodian position over a part-time, current part-time custodian in asserting the rights under the CBA. So in response to that and close in time to when that happened, the district issued warnings and demoted him in May, on May 4th, 2023. But didn't they demote him because he was doing an activity, specifically wiping the tables with a mop? Correct, Your Honor. And I will point out that when looking at the, whether there is any irregularity and disciplinary action, looking at the collective bargaining agreement, and we don't, that was the district's stated reason for demotion, that is true. But when you look at what the collective bargaining agreement outlines, which should be the district's regular disciplinary structure, there's a deviation from that. The collective bargaining agreement allows for verbal warning, written warning, and suspension. And it reserves more- But isn't this different because he was a probationary employee? He had just transferred from one unit into another. So isn't it different for probationary employees? We maintain that that provision of the collective bargaining agreement with the progressive disciplinary provision should apply to him as well. What's the case law that says you can deviate from the terms that are negotiated in the collective bargaining agreement that allows the deviation? I mean, it's plain language in the collective bargaining agreement that when they transfer from one unit to another, they're on this probationary period. So what authority do you have that they can deviate from the negotiated collective bargaining agreement? Well, we don't maintain that it's a deviation from the collective bargaining agreement. We maintain that the district is obligated to abide by the progressive discipline structure. And this is not just, you know, we're terminating you, we're getting rid of you. It's more so we're alleging that you committed serious misconduct. And when you look at the examples given, in the collective bargaining agreement, they are very different from the type of conduct that the district alleges that he engaged in. And those- So you have no authority to support your position that you're arguing. Is that what you're saying? It's our, yeah. It's our position that progressive disciplinary provision does control, Your Honor. Go ahead. See, when you look at the examples provided for serious misconduct under that provision, things like theft, insubordination, physical violence, sexual misconduct, possession of a firearm or drugs, those examples describe conduct that is much more serious than what Mr. Howard engaged in. And it doesn't- Yes, Your Honor. Wiping down tables upon which students eat lunch with a dirty mop would be a public safety hazard. It would be extraordinarily harmful or potentially harmful to anybody that used those tables. I mean, no, that's not theft, but it's serious. Do you disagree? I, when compared to the examples given in the collective bargaining agreement, we do maintain it's of a very different nature. When you're using a term in those examples, give some insight as to what the district, what the parties would consider to be serious. We do think that is of a very different nature. Now there were different avenues for a person with no discipline in the district whatsoever. There were different avenues available to the district when addressing this issue. Not that it should not have been addressed, but the district could have suspended him, the district could have given him, I mean, even stopping at the first step, written warning, verbal warning, which it did, and even after the district did that, and it fully advised him of the issues, that could have corrected the issue entirely. But even after doing that, the district went a step further and skipped over suspension and then went straight to demotion. But we do maintain that it's not a nature that's, it does not fit the examples of serious misconduct that are outlined in the contract. Are those examples to be exclusive? They are not. But we do believe they give some characterization and it's a guide to interpret what serious misconduct means under the CBA. Thank you, Captain, your time is up. You'll have another opportunity to address us in rebuttal. Thank you. So at this time then, who will be arguing first for the appellee? I will be, Your Honor. Okay, Ms. Notley, you may proceed. Great. Good afternoon, Your Honor, and may it please the court. As an initial matter, I want to address the reasons that this court should deny petitioner's pending motion to supplement the record. In order to do so, I think it might be helpful to summarize the proceedings before the Illinois Educational Labor Relations Board. So the underlying proceedings started in November of 2023, when petitioner filed an unfair labor practice charge, where he alleged the district committed an unfair labor practice by demoting him for cleaning cafeteria tables with a dirty mop, and then disclosing his involuntary transfer to district staff, which he alleges was in violation of the governing collective bargaining agreement. So after petitioner filed his charge, the executive director sent a letter to petitioner instructing him to submit all documents and other evidence relevant to his claim by email to the investigator, and to serve all materials except affidavits on the responding parties. On November 22nd and November 27th, petitioner filed documents with the IDLRB that supported his unfair labor practice claim with respect to violations of the collective bargaining agreement. And he served all of that evidence on the district as well. Thereafter, the IDLRB investigator who was assigned to the case, Don Hardin, notified the district that it had until December 21st, 2023 to file its response in response to the charge and evidence in the matter. That deadline was later extended to January 11th of 2024. And on that date, the district did file its position statement and supporting documentation with respect to the only unfair labor practice claim that petitioner had raised at that point in time and that concerned violations of the collective bargaining agreement. On November 15th, 2024, the executive director filed his recommended decision and order, which indicated that petitioner had expanded his charge to allege retaliation for his protected activity. This was the first time that the district had any indication that the petitioner was alleging retaliation. How did the petitioner expand it? What was the means of his doing that? I do not know, your honor. The district had no notice of this whatsoever until the executive director issued his decision. Well, did the executive director say that there was an amended complaint or how did he explain how this came about? He said that the petitioner expanded his claim during the narrative to include a claim of retaliation. Okay, go ahead. Again, this was the first time that the district had any indication that the petitioner was alleging retaliation and the district was still blind as to the petitioner's evidence supporting a retaliation claim. The recommended decision and order contained no indication whatsoever that petitioner had also expanded his charge to include a claim of disparate treatment. The first time that the district heard anything about disparate treatment or the alleged evidence supporting petitioner's retaliation claim was when petitioner filed his exceptions to the recommended decision and order. Yet even then, the petitioner failed to attach those communications to his exceptions or supplement the record with actual evidence to support his retaliation and or disparate impact claims. All this is to say that at no time during the underlying administrative proceedings did the petitioner file with the IELRB or serve upon the district any evidence to support the retaliation or disparate impact claims he alluded to in his exceptions. Go ahead. Ms. Guggets' response or questions about that, what is your assessment of her response? Yeah, those claims were only raised in her personal communications to the IELRB investigator, which we now know based on the documents that she filed with her motion to supplement the record. So that is the only indication. She seems to claim that that's sufficient. Why is she wrong in doing so? That is insufficient because number one, those communications are not evidence that the board can consider. At best, those communications are hearsay. This is petitioner's counsel summarizing what she believes petitioner's claims are. Before the board made its decision, was that information presented to it in some fashion? I don't know. So we don't know what the board was considering? I know that the board adopted the executive director's factual findings, which did mention the retaliation piece. It did not mention disparate impact at all. And the fact that the board agreed that petitioner had not raised disparate impact leads me to believe that they did not review these communications. In any event, the district didn't know anything about it? No, the district did not. Okay, go ahead. Can I ask you about the prejudice? Counsel seemed to allude that your client would not suffer any prejudice. What's your thoughts on that? I disagree. I think if petitioner was allowed to supplement the record with these communications at this juncture, the district would be prejudiced. These communications were never part of the administrative record. They were never served on the district. So the district never had an opportunity to object on hearsay grounds, which it would have done so. It never had an opportunity to move to strike those communications or to submit countervailing evidence. More fundamentally, the district was denied any chance to defend against allegations of retaliation and disparate treatment because those allegations were never pleaded in the unfair labor practice charge. And they were never, and still are not, supported by any competent evidence that was before the IELRB or in petitioner's counsel's communications. Thank you. Yes. You may continue, counsel. Okay, so with respect to petitioner's pending motion to supplement, this court should not allow petitioner to do so. He had every opportunity to supplement the record with actual evidence supporting retaliation and disparate impact claims in the underlying proceedings, and he failed to do so. This court should also reject petitioner's attempts to avert a denial of his motion to supplement on the basis that those communications, quote, are being offered for the limited purpose of permitting meaningful review of the board's stated rationale for refusing to consider disparate treatment evidence. That's a claim that petitioner makes in his reply brief on page seven, the first paragraph. That claim does not withstand scrutiny. In fact, it's flatly contradicted by petitioner's own pleadings and arguments. His complaint for administrative review and the supporting brief before this court and the arguments counsel made here today depend almost entirely on information that exists only in those communications, which are outside of the record. Putting all that aside, the communications that petitioner seeks to supplement are indisputably hearsay. A petitioner does not contest that fact. As a result, whether this court supplements the record or not, the contents of counsel's communications cannot be considered for the truth of the matters asserted. And once that hearsay use is removed, as it must be, petitioner's claims collapse where there is nothing else in the record that even hints at retaliation or disparate impact beyond the executive director's general statement that the narrative included a retaliation claim. In addition, petitioner suggested in his reply brief that even if this court were not to supplement, his factual assertions are sufficiently grounded in the existing certified record under rule 341H6. That is on page four of his reply brief. But that contention is illusory. His citations do not point to admissible evidence. They point to his own exceptions in supporting memorandum filed in response to the executive director's recommended decision and order. Those filings merely repeat the same hearsay assertions derived from counsel's communications. In fact, petitioner's statement of facts and his brief before this court is largely copied verbatim from the memorandum he filed in support of his exceptions below. As such, reliance on those materials should be stricken or at a minimum disregarded by this court. With that hearsay material omitted, petitioner's allegations essentially disappear, leaving no factual basis for his claims as a matter of law. I wanna address just briefly the standard of review in this case. After reviewing additional cases, including those that the state respondent cited in their brief, the district does agree with the state respondent that the appropriate standard of review is an abuse of discretion. I'm sorry, I see my time is up. Thank you, counsel. Thank you. Mr. Rush, on behalf of the IELRB, you may make your argument at this time. Thank you, your honor. Good afternoon, and may it please the court. I'm Assistant Attorney General Caleb Rush, appearing for the Educational Labor Relations Board and related parties. We asked the court to affirm the board's decision and to deny the motion to supplement the record. There's no legal basis for supplementing this record with unsworn hearsay statements that were not filed with the board and not served on the other party. And applying the abuse of discretion standard to the record, there's no basis for reversing the dismissal excuse me, reversing the dismissal of Howard's unfair labor practice charge. I'll try to avoid duplicating too much what Ms. Donnelly said about supplementing the record, but if I could just add or emphasize just a couple points. Board regulations require documents to be filed. Board regulations require documents to be served on the other parties. And the board, you know, board regulations require evidence, not unsworn statements, not hearsay. Howard has not cited any legal authority for adding these kinds of materials to the record. Instead, Howard cites rule 329 about fully and fairly presenting the questions involved. But this rule has- Is it your intention, council, on behalf of the board that the material that Howard is now seeking to have added to the record was never properly before the board in the first place? I think that that's fair to say. And if I can also circle back to your earlier question, your honor. Yeah, go ahead. We do know what's before the board, which is the administrative record. And the board was looking to the executive director's recommended decision. So the board did adopt that statement of facts to be sure, but it was not actually based on admissible evidence that was filed before the board and served to the other side. And now- Assuming that's correct, what is the executive director doing referring to matters as if they're before the board, which aren't? I think that the board was attempting to be flexible and not dispose of a case on technicalities and do its best to look at the merits of what was presented. Sometimes that type of flexibility can be important, especially when parties before the board and dealing with investigators are pro se. But now before this court, what we don't have is a record that Howard's, Howard, through his counsel, had an obligation to present and make the record for this court. What we don't have is a record that would support reversal of the board's decision. Well, I can appreciate the board's thinking as you describe it, but why would the executive director include a discussion of matters which were not properly before the board in the first place? As a practical matter, my best understanding of how that came about is that the investigator on the emails assisted the executive director in preparing that decision. To the extent there was anything irregular about what wound up in the content of the executive director's decision, that would have been an error in Howard's favor and certainly not now a basis for reversing the board's decision or a basis for, you know, if that was an error, a basis for adding on to it or compounding it now. Okay, you may continue. Thank you, Your Honor. Howard's counsel says there was no opportunity to present these things, but the initial communications after Howard filed his unfair labor practice charge, the initial communication from the board, and this is a pro forma application, says you need to file your evidence and serve it on the other side. There was every opportunity to make the record that would be required here now. Are you agreeing with Ms. Donnelly that the so-called evidence in question, in fact, was not dealt with as that requirement would state? Yes, I agree that there was not admissible evidence filed and served as required by board regulations. Go ahead. And just as a final point about the legal standards when we look at supplementing this record, Rule 329 has never been interpreted as far as I know to supplement an administrative record with materials that were not filed and served properly during the administrative proceedings. And we cite Dean v. Lustig in our brief that addresses this, and there's parallels with Dean v. Lustig because this was also a case where the petitioner on administrative review had submitted materials or said that they did in an earlier stage of the administrative proceedings, but did not submit those materials in the final stage of the administrative proceedings just like here, these emails, they weren't even attached to the objections filed before the board. Now, if I could move on to the merits of the question, why the board's decision should be affirmed. As Ms. Donnelly said, the standard of review is abuse of discretion. I think that at this point that's undisputed, or at least we haven't had argument in Howard's reply brief to dispute that. The unfair labor practice charge itself was entirely alleging a breach of contract. And I think it's now undisputed that that is not in and of itself an unfair labor practice. We addressed this in our brief. There's no dispute to this in Howard's reply brief. And again, that was the sole basis for an unfair labor practice stated in Howard's charge. Instead now, the argument to the extent the court is even going to consider these off-the-record emails, the argument is that they support a case of retaliation for protected activity. The court does not need to reach this argument because the record isn't there. The record isn't even before the court. To the extent the court wishes to consider this argument at all, I want to make a couple, a few comments about it. The unfair labor practice charge cited only section 14A1. That is about protected concerted activity. The test for protected concerted activity under section 14A1 is set out in the Schaumburg case from 1993. It's cited in the board's decision. It's cited in, and it's cited in Howard's reply brief. The board addressed that standard, which is in determining whether Howard engaged in protected concerted activity. Did he invoke the collective bargaining agreement? Did he engage in activity in concert with other employees or at least do something that contemplated that? And the board recognized, okay, his complaints five months before he was demoted specifically invoked CBA provisions. But applying that same Schaumburg test with his complaints, again, from these hearsay emails, with his complaints about shortly before he was demoted, Howard did not point to CBA provisions. Howard did not act in concert with other employees or contemplate doing any such thing. Howard has not disputed that determination before this court. It's forfeited. If the court is going to consider that determination at all, I wanna point out a couple of key things about this legal standard. Number one, it's not just about any activity that might affect the group. And the Schaumburg case is very clear about that. And number two, the standard is not about protected union activity. I see my time is running out. If I could just finish my sentence. You may. The standard for protected union activity is under section 14A3, not cited in the ULP charge, not cited in Howard's opening brief before the court. It's a different standard. And so for that reason, even if the court were to consider these off the record matters, there's no basis for concluding that Howard engaged in, that Howard submitted a prima facie case of protected act, considered activity shortly before he was demoted. And then that leads to the board's final conclusion. There's no abuse of discretion in determining that there's no prima facie case showing a subjective retaliatory motive, a key element of the standard, a subjective retaliatory motive which would be necessary. That's enough. Thank you. Ms. Bugish, on behalf of the appellant, you may make your rebuttal argument, but I'd like you to begin by addressing what Ms. Natalie argued to us, which is that she represents the school district and the school district, contrary to regulations was never served with this information that she was entitled to receive as a party. What about, what's your response to that? You're muted counsel. My apologies. My apologies, your honor. I would first say that the, you know, generally the purpose of the investigation is for, you know, facts to be, or issues to be gathered for the board and the board viewing- I think you need to stop right there. You can answer that question by saying yes or no as to whether or not the board was served with this information. That's the question that was asked. The board was not, the district was not served with that information. Thank you. Thank you, your honor. Do the board's rules require the district to be served with that information? The administrative rules do require the district to be served with formal documents. And I'm pulling up the specific, the specific section. We do concede that as far as formal documents, the party is required to serve that. And, but that does not, our position is that that does not preclude other issues from arising or other information from arising during the course of the investigation. Ms. Valens points that the school district never had an opportunity to address any of this matter before the board, before it made its decision. Yes, your honor. And we would maintain that the board should take into account the issues that come up during the course of investigation and determine whether there are sufficient facts to warrant a hearing. Now- Do you know if those matters coming up during the course of investigation are unknown and never communicated to one of the parties? We maintain that the hearing would be the opportunity for that, for the, if there was a complaint issued and if there was a hearing held, the parties would have had an opportunity to fully address the issues that came up during the course of an investigate, the board agent's investigation. So the first time the school district hears about this is the hearing, when they're told, by the way, these are some claims that Howard has made. You're saying that's adequate? That in itself would not be adequate except there are pre-hearing procedures that would fairly advise the, all of the parties of what the issues are in the case and give an opportunity to respond. And as far as the allegations that the assertions that the information communicated to agent to Coke were hearsay, we've maintained that that goes to the weight of the evidence, which again would have been determined at hearing. We maintain that the board cut that off too soon where that the opportunity never occurred, never happened for that to occur. Well, of course the school district can't object to any hearsay if they're not told that's being offered and considered, can it? Right, and prior to the hearing during the pre-trial procedures, they would have been advised and had an opportunity to object. But again, the board adopted the executive director's decision and cut that issue off too soon. There were no pre-trial procedures in this case, were there? There weren't because of the board's decision adopting the executive director's recommended decision. So the complaint about hearsay, the school district never had an opportunity to address that at all, did it? It did not because the board cut off and prematurely dismissed the complaint. You may continue with your rebuttal argument, Kelly. Yes, Your Honor. Again, we encourage the court and we maintain that the board should have considered the whole scheme of what happened, not just the December 22 action. And as far as the probationary provision of the CBA, we maintain that has a limited effect and pertains only to layoffs and reductions in force, not discipline. Thank you. Thank you, counsel. The court will take this matter under advisement and we'll stand in recess at this time.